UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| THOMAS A BOWMAN, | ) | | |
| Individually and as Next of Kin of | ) | | |
| LEE W. BOWMAN, Deceased, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:08-CV-37 |
| | ) | | (VARLAN/GUYTON) |
| BULKMATIC TRANSPORT COMPANY, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This civil action is before the Court on the post-trial briefs, filed by the parties to this case following the trial and the verdict of the jury.[1]  In light of the jury verdict, returned on January 25, 2010, the Court entered an order [Doc. 93] directing the parties to submit post-trial briefs on two specific issues.  Plaintiffs Thomas Bowman, individually and as next of kin of Lee W. Bowman, deceased, submitted a post-trial brief [Doc. 94] and a motion [Doc. 96] for new trial or altered or amended judgment pursuant to Federal Rule of Civil Procedure 59.  Defendant Bulkmatic Transport Company, Inc. also submitted a post-trial brief [Doc. 95].  Plaintiffs filed a response to defendant's post-trial brief [Doc. 97] and defendant filed a response to plaintiffs' post-trial brief [Doc. 98].

---

[1] The trial was held before the Honorable Thomas A. Varlan, United States District Judge, from January 21, 2010 to January 25, 2010 [*see* Docs. 87-90].  The jury returned the verdict on January 25, 2010 [*see* Doc. 90; Doc. 92].

## I.     Relevant Facts and Procedural History

### A.     The Underlying Facts

Defendant is a corporation that owns tractor trailer trucks which haul cargo for customers.  Defendant also employs drivers to operate these trucks.  One of the drivers employed by defendant was Jeffrey Ritchie ("Ritchie").  On February 9, 2007, Ritchie was driving one of defendant's trucks on a hauling trip for defendant.  While Ritchie was on this assignment, he allowed Lee W. Bowman ("Bowman"), who was not an employee of defendant and not a licensed driver of tractor trailer trucks, to drive defendant's truck while Ritchie rode as a passenger.  At some point in the journey, due to driver error, the truck left the roadway and overturned.  Both Ritchie and Bowman were declared dead at the scene. After the accident, investigating authorities confirmed that the truck was indeed being driven by Bowman at the time of the accident and Ritchie was riding as a passenger.  Defendant's employee policy, known and understood by Ritchie, explicitly forbid its employees to allow unauthorized persons to ride as passengers, drive, or otherwise assume control of defendant's trucks.

### B.     Pre-trial

On February 8, 2008, plaintiffs filed the complaint asserting a wrongful death action under Tennessee state law against defendant and the Estate of Jeffrey W. Ritchie ("the estate of Ritchie") seeking compensatory and punitive damages.  In the complaint, plaintiffs asserted that Ritchie was negligent, grossly negligent, and/or reckless for allowing Bowman to drive the truck and that his actions were the proximate cause of Bowman's injuries and

death. Plaintiffs also asserted that defendant, as Ritchie's employer, was vicariously liable for Ritchie's conduct because the accident occurred in the course and scope of Ritchie's employment and in furtherance of defendant's business. Plaintiffs also asserted that defendant was liable for its own negligence in hiring, training, and failing to supervise Ritchie. Last, plaintiffs asserted that Ritchie's actions constituted willful and wanton misconduct for which defendant, as his employer, is liable under Tennessee state law, specifically, the case of *Ball v. Whitaker*, 342 S.W.2d 67 (Tenn. Ct. App. 1960), and the cases cited therein.

Defendant did not dispute that Ritchie was negligent in allowing Bowman to drive the truck in violation of its employee policy. However, defendant asserted that Ritchie's conduct was not grossly negligent, reckless, or willful and wanton. Defendant also argued that even if Ritchie's conduct was grossly negligent, reckless, or willful and wanton, Ritchie was not acting in the course and scope of his employment when he allowed Bowman to drive the truck, and thus, defendant cannot be vicariously liable for Ritchie's conduct. Defendant also asserted that it was not negligent in its hiring, training, supervision, or oversight of Ritchie.

Prior to trial, the estate of Ritchie filed a motion to strike and exclude plaintiffs' claim for punitive damages against the estate of Ritchie [Doc. 41], asserting that the punitive damages claim against the estate of Ritchie should be disallowed because a punitive award against the estate of a deceased tortfeasor would not serve the purpose of punitive damages–namely, to punish the wrongdoer. *See Hayes v. Gill*, 390 S.W.2d 213 (Tenn. 1965). The Court granted the motion [Doc. 67], striking the punitive damages claim as it

pertained to the estate of Ritchie. Plaintiffs then filed a motion requesting the voluntary dismissal of all their claims against the estate of Ritchie [Doc. 74]. The Court granted the motion [Doc. 86], dismissing all plaintiffs' claims against the estate of Ritchie, thus leaving defendant as the sole defendant in this action.

### C.    The Trial and the Verdict

The trial began on January 21, 2010. In the course of the trial and in the pleadings and discussions concerning the instructions to be given to the jury, an issue arose regarding the potential liability of defendant if the jury determined that Ritchie's conduct in allowing Bowman to drive the truck was willful and wanton, as plaintiffs alleged. Citing *Ball v. Whitaker*, plaintiffs argued that if the jury found Ritchie's conduct to be willful and wanton, defendant would be liable whether or not Ritchie was acting in the course and scope of his employment with defendant. 342 S.W.2d 67. Defendant disagreed, asserting that even if the jury found Ritchie's conduct to be willful and wanton, if the jury also found that Ritchie's conduct was not in the course and scope of his employment, defendant would not be liable under principles of respondeat superior and Tennessee state law.

Prior to trial, the Court determined that its consideration of this issue required two determinations by the jury. First, whether (1) Ritchie's conduct was willful and wanton, and second, whether (2) this conduct was in the course and scope of his employment with defendant. Thus, to properly frame this issue, and after considering the applicable law, the parties' proposed jury instructions, and after holding two charge conferences with counsel for the parties, the Court instructed the jury as follows:

4

## Conduct Imputed to Employer for Unauthorized Passenger

When an employee operates a motor vehicle for an employer, and where a person rides in the motor vehicle on the unauthorized invitation of the employee, the person is not a guest of the employer and if the person is injured or killed from the employee's negligence, no liability for that injury ordinarily attaches to the employer.

However, an unauthorized person may be entitled to recover from the owner for injuries caused by the wanton or willful conduct of the employer.

[Doc. 44, p. 18 (plaintiffs' proposed jury instructions, derived from *Ball*, 342 S.W.2d at 70)].

## Principal and Agent Definition

A person who is authorized to act for another person or in place of another person is an agent of that person.

For the purposes of this case, the term "agent" includes an employee and that agent is authorized to act within the scope of his or her employment.

The person or entity that authorizes the agent to act is called the principal. For purposes of this case, the term "principal" includes an employer.

A principal can be held responsible for the acts or omissions of the principal's agent.

In this case, plaintiff claims that defendant Bulkmatic was the principal and employer of Jeffrey Ritchie and Jeffrey Ritchie was the agent and employee of defendant Bulkmatic.

[Doc. 44, p. 17 (plaintiffs' proposed jury instruction derived from T.P.I. – CIVIL 12.01)]. [2]

## Scope of Authority

In order to be considered the act of the principal, the act of the agent must be within the scope of the agent's authority or employment.

It is not necessary that a particular act or failure to act be expressly authorized by the principal to bring it within the scope of the agent's authority or employment. Conduct is within the scope of the agent's authority or employment if it occurs while the agent is engaged in duties that the agent was authorized or employed to perform and if the conduct relates to those duties. Conduct for the benefit of the principal that is incidental to, customarily connected with, or reasonably necessary to perform an authorized act is within the scope of the agent's authority or employment.

T.P.I – CIVIL 12.02.

## Scope of Employment

Conduct of an employee is within the scope of his employment if, but only if:

(A)    It is of the kind the employee is employed to perform;
(B)    It occurs substantially within the authorized time and space limits;
(C)    It is done, at least in part, by a purpose to serve the employer;

Additionally, to be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

In determining whether or not the conduct, although not authorized, is nevertheless so similar or incidental to the conduct

---

[2] "T.P.I." refers to the Tennessee Pattern Jury Instructions – Civil.

authorized as to be within the scope of employment, the following matters may be considered:

> (A)  Whether of not the act is one commonly done by such employees;
>
> (B)  The time, place, and purpose of the act;
>
> (C)  The previous relations between the employer and employee;
>
> (D)  The extent to which the business of the employer is apportioned between different employees;
>
> (E)  Whether or not the act is outside the enterprise of the employer, or if within the enterprise, it has not been entrusted to any employee;
>
> (F)  Whether or not the employer has reason to expect that such an act would be done;
>
> (G)  The similarity and quality of the act done and the act authorized;
>
> (H)  Whether or not the instrumentality by which the harm is done has been furnished by the employer to the employee;
>
> (I)  The extent of departure from the normal method of accomplishing unauthorized results.

[Doc. 53; Doc. 54 (defendant's proposed jury instructions, derived from Restatement (Second) of Agency §§ 228, 229 (1957); *see also Tenn. Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937-38 (Tenn. Ct. App. 1992))].

Following the delivery of the Court's instructions, the Court presented the jury with a verdict form [Doc. 92] which was drafted by the Court following the charge conferences with counsel for the parties and after the Court had considered the suggestions of counsel and the applicable law. The jury returned the verdict form to the Court with the following findings:

1. Considering all the fault at 100%, what percentage of the total fault, if any, in this case, is chargeable to each of the following parties:

   Jeffrey Ritchie                          65%
   Bulkmatic Transport Company, Inc.        10%
   Lee Bowman                               25%

   The total percentage of fault you awarded above **must** equal **either 100% or 0%**.

If you **do not assign any fault** to any of the above parties, then you will enter **0%** in each blank. If you assigned fault to one or more than one of the above parties, your total percentage of fault assigned **must** equal **100%.**

If you **assigned 50% of the fault or more** to Lee Bowman, **STOP, SIGN, and DATE** the verdict form, and return it to the Court.

If you **assigned less than 50% of the fault** to Lee Bowman, **GO ON, CIRCLE YES OR NO** on questions TWO (2) through FOUR (4).

2. If you assigned fault to Jeffrey Ritchie, was his conduct at the time of the accident **willful or wanton**?

   **YES (The jury indicated YES)**

   NO

3. If you assigned fault to Jeffrey Ritchie, was his conduct at the time of the accident in the **course and scope of his employment** with Bulkmatic?

   YES

   **NO (The jury indicated NO)**

4. Without considering the percentage (%) of fault that you assigned to the parties in Question One (1), what total amount of damages, if any, do you find were sustained by:

8

Lee Bowman, for conscious pain and suffering:
>Amount: $25,000

The Plaintiff, Thomas Bowman
>individually, and as next of kin of Lee Bowman, deceased, for the pecuniary vale of Lee Bowman's life, which includes: lost attention, care, protection, companionship, cooperation, affection, and love.
>>Amount: $250,000

By **clear and convincing evidence**, you the jury, unanimously find that:

5.      Do you find that punitive damages should be awarded to the Plaintiff, Thomas Bowman?

If you decide to award punitive damages to the Plaintiff for the conduct of one or both of the parties, **DO NOT assess the amount of damages** at this time, instead, report your findings to the Court.

Circle YES or NO.

a)      For the conduct of Jeffrey Ritchie?

**YES (The jury indicated YES)**

NO

b)      For the conduct of Defendant Bulkmatic?

YES

**NO (The jury indicated NO)**

As shown above, the findings of the jury clearly framed the issue of liability

contemplated by the Court and the parties prior to trial–whether defendant, as Ritchie's

employer, is liable for Ritchie's willful and wanton conduct when Ritchie's conduct was found not to be in the course and scope of his employment with defendant. The Court then entered an order [Doc. 93] directing the parties to submit post-trial briefs on the following issues, to be followed by response briefs if the parties deemed responses necessary.

(1) What is the impact of the jury's findings in terms of the conduct of Jeffrey Ritchie and the liability, if any, of defendant Bulkmatic Transport Company, Inc., in light of the analysis and holding of the Tennessee Court of Appeals case of *Ball v. Whitaker*, 342 S.W.2d 67 (Tenn. Ct. App. 1960).

(2) What, if any, is the impact of the jury's findings on the issue of punitive damages in regards to the conduct of Jeffrey Ritchie.

Plaintiffs submitted a post-trial brief [Doc. 94], as did defendant [Doc. 95]. Plaintiffs filed a response to defendant's post-trial brief [Doc. 97], and defendant filed a response to plaintiffs' post-trial brief [Doc. 98].

## II.    Analysis

Plaintiffs assert that under Tennessee law, primarily the *Ball* decision and the cases cited therein, the willful and wanton conduct of Ritchie, by itself, creates imputed liability as to defendant, Ritchie's employer. Plaintiffs assert that the question of whether Ritchie was acting in the course and scope of his employment with defendant, and the jury's finding that he was not, is irrelevant and the jury's finding that Ritchie acted willfully and wantonly "end[s] the discussion." Plaintiffs submit that, even if the question of course and scope of employment were relevant, the course and scope inquiry question is a question of law to be

decided by the Court and thus, should have been submitted to the jury.[3] Plaintiffs also assert that because the jury determined that punitive damages should be awarded due to the willful and wanton conduct of Ritchie, and because Ritchie's conduct is imputable to defendant under Tennessee state law, defendant is liable for punitive damages and a hearing should be held to determine the amount of punitive damages.

Defendant asserts that the facts of this case are distinguishable from *Ball* and thus, *Ball* does not control the ultimate outcome. Defendant asserts that an employer is not liable for an employee's conduct when that conduct was not within the course and scope of his employment–thus, defendant argues, it is of no moment whether Ritchie's conduct was willful or wanton because the jury determined his conduct was not within the course and scope of his employment with defendant. In regard to the issue of punitive damages, defendant asserts that punitive damages are no longer available in this case for two reasons. First, because, by order [Doc. 67] of the Court, it was determined that the estate of Ritchie

---

[3] In making this assertion, plaintiffs also state that this would entitle plaintiffs, at a minimum, to an amendment or alteration of the judgment, or a new trial, pursuant to Federal Rule of Civil Procedure 59 [Doc. 94, pp. 1-2]. Plaintiffs have also filed a motion for new trial and to alter or amend the judgment (the "motion for new trial") [Doc. 96]. However, plaintiffs also acknowledge that the questions presented in their post-trial briefs and considered in this Memorandum Opinion and Order are questions to be considered prior to the Court's entry of judgment and the motion for new trial has only been submitted "out of an abundance of caution." [Doc. 94, p. 2 n.1].

The Court agrees that plaintiffs' motion for new trial [Doc. 96] is premature and the Court will thus deny the motion without prejudice. The Court, however, will address herein any of plaintiffs' assertions, to the extent the Court deems necessary, even if such assertions could also be asserted in a motion for new trial.

could not be liable for punitive damages, and second, because plaintiffs moved to voluntarily dismiss the estate of Ritchie from this case, a request the Court granted [Doc. 86].

### A. Whether, Based on the Facts of this Case, the Issue of Course and Scope of Employment was a Question of Law or Fact

As an initial matter, the Court does not agree that the course and scope of employment inquiry is a question of law that should not have been submitted to the jury. Plaintiffs assert that even if a course and scope determination were relevant, it is a question of law that should not have been submitted to the jury but should have been decided by the Court. The Court, however, does not agree that the authorities cited by plaintiffs demand such a conclusion.

Citing *Carpenter v. Laxton*, 96 F.3d 1448, 1996 WL 499099 (6th Cir. 1996) (Table), which, in turn, cites *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996), plaintiffs argue that "whether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *Carpenter*, 1996 WL 499099, at *1 (citing *RMI*, 78 F.3d at 1143). While the quote from *Carpenter* is correct, the issue and procedural posture of the *Carpenter* case and the *RMI* case are quite different from the facts and the issues presented in this case, and accordingly, the Court finds the statement from the *Carpenter* case inapplicable.

Both *Carpenter* and *RMI* consider claims brought under the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act"), which applies to civil suits in which the United States may substitute itself as a party defendant against federal employees "[u]pon certification by the Attorney General that the defendant employee was

acting within the scope of his office or employment at the time of the incident out of which the claim arose . . . ." 28 U.S.C. § 2679(d)(1). Pursuant to such a certification, the government shall then remove the case to federal district court. *Id.* § 2679(d)(2). This scope-of-employment certification is subject to judicial review for purposes of certification. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). Thus, once the government has removed such a case to federal court, the plaintiff may then challenge the government's substitution of itself as defendant. *Gutierrez*, 515 U.S. at 434-36. If the district court finds that the federal employee being sued was acting in the scope of his or her employment, and substitution of the United States is appropriate, the district court must assess the plaintiff's claims pursuant to the Federal Tort Claims Act. *Id.* If, on the other hand, the district court finds that the federal employee being sued was not acting in the scope of his or her employment and that substitution of the government was inappropriate, the district court retains jurisdiction over the case, but assesses the claims pursuant to state tort law. *Id.* Thus, it is when a district court is reviewing a scope-of-employment certification under the Westfall Act that the question of "[w]hether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *RMI*, 78 F.3d at 1143; *see also Singleton v. United States*, 277 F.3d 864, 870 (6th Cir. 2002). Thus, the "question of law" referred to in *Carpenter* regarding scope of employment is pursuant to a certification and substitution issue under the Westfall Act, not the issue of whether, under the facts of a specific case, the course and scope of

employment issue is a question which should be submitted to the jury or determined by the judge as a matter of law.[4]

Upon the Court's review of relevant case law, the question of whether an employee's actions are within the course and scope of an employment relationship is a question often put to a jury. "While the principles embodied in the respondeat superior doctrine are relatively easy to articulate, they are not always easy to apply." *Tennessee Farmers Mut. Ins. Co.*, 840 S.W.2d at 937 (citation omitted). "The doctrine does not lend itself to bright line rules . . . but rather requires the weighing and balancing of the facts and circumstances of each case." *Id.* (citations omitted). "Whether the employee's act is *within the scope of his employment is ordinarily a question of fact for the jury*, except where the departure from the master's business is of marked and decided character." *Craig v. Gentry*, 792 S.W.2d 77, 80 (Tenn. Ct. App. 1990) (citing *Home Stores, Inc. v. Parker*, 166 S.W.2d 619 (Tenn. 1942)) (emphasis added); *see also Cheatwood v. Curle*, No. W2007-02204-COA-R3-CV, 2008 WL 2687618, at * 4-5 (Tenn. Ct. App. July 7, 2008). Thus, the inquiry only "becomes a question of law when the facts are undisputed and cannot support conflicting conclusions." *Tennessee Farmers Mut.*, 840 S.W.2d at 937.

The unique set of facts presented in this case did not, in the Court's view, support such a clear determination and the Court properly submitted the question of whether Ritchie was

---

[4] The other cases cited by plaintiffs [Doc. 94, pp. 8-9] pertain to the same issue, a scope-of-employment analysis of the conduct of a federal employee for purposes of the government's certification and substitution of itself under the Westfall Act.

acting in the course and scope of his employment to the jury. The Court instructed the jury with instructions taken, almost verbatim, from *Tennessee Farmers Mut.*, the leading Tennessee Court of Appeals case on the issue of course and scope of employment, along with related instructions on agency law.[5] Thus, the jury was presented with the relevant law and the relevant factors, and their determination is reflected in the verdict form [Doc. 92].

Finally, after the Court's review of *Ball* and the other relevant cases, the Court concludes that because the issue of liability presented by this case was a novel and complex one, the Court's submission of the question of course and scope of employment to the jury was proper. The jury's determination of this issue was necessary for the Court to engage in a thorough analysis of the question of liability presented by this case and to determine whether the course and scope of employment analysis is relevant under *Ball*. The submission of this question also offered the parties an opportunity to brief the relevant issues and allowed the Court to make a proper determination. Accordingly, the jury's finding that Ritchie was not acting in the course and scope of his employment was an important part of the Court's analysis and it was a proper question to be submitted to the jury.

---

[5] The factors articulated in *Tennessee Farmers Mut.* as applicable to a course and scope of employment analysis are derived, in part, from the Restatement (Second) of Agency §§ 228, 229 (1957). The parties also had the opportunity prior to the trial of this case to submit proposed jury instructions. The Court included a number of the parties' requested instructions in its jury instructions, including instructions on issues of agency and the factors articulated in *Tennessee Farmers Mut. See supra* section I, part C.

## B. Course and Scope of Employment

In *Anderson v. Covert*, 245 S.W.2d 770 (Tenn. 1952), the Tennessee Supreme Court stated that:

> [F]or the acts of the servant, within the general scope of his employment, while engaged in the master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly, or even willfully. In general terms, if the servant misconducts himself in the course of his employment, his acts are the acts of the master, who must answer for them.

*Anderson*, 245 S.W.2d at 771-72 (quotations and citations omitted); *see also Terry v. Burford*, 175 S.W. 538, 542 (Tenn. 1915). This concept of course and scope of employment, part of the doctrine of respondeat superior, renders an "employer vicariously liable for the torts of its employees while they are acting within the scope of employment." *Raines v. Shoney's, Inc.*, 909 F. Supp. 1070, 1083 (E.D. Tenn. 1995). In *Tennessee Farmers Mut.*, the Tennessee court of appeals outlined various agency law principles relevant to the determination of whether an employee acted in the course and scope of his employment, *id.* at 937-38, and noted that the doctrine "does not lend itself to bright line rules, but requires the weighing and balancing of the facts and circumstances of each case." *Id.* at 937 (citations and quotation omitted). A Tennessee court of appeals has applied similar principles of agency law to an employee's negligent operation of his employer's vehicle:

> On the issue of agency, in order to hold an employer responsible for the acts of an employee, "it is necessary to show that the relationship of master and servant exists between the wrongdoer and the defendant (employer) at the time and in respect to the very transaction out of which the injury arose. The mere fact that the driver of the vehicle

> causing the injury was the defendant's servant will not make the
> defendant liable.  It must be further shown that at the time of the
> accident the driver was on the master's business and acted within the
> scope of his employment.

*Leeper Hardware Co. v. Kirk*, 434 S.W.2d 620, 623-24 (Tenn. Ct. App. 1968) (quoting

*Midwest Dairy Products Co. v. Esso Standard Oil Co.*, 246 S.W. 2d 974 (Tenn. 1952)).[6]

Principles of agency law identified in Tennessee cases and the factors regarding course and

scope of employment identified in *Tennessee Farmers Mut.* were submitted by the parties

as proposed jury instructions and were included, almost verbatim, in the Court's jury

instructions.

### C.    Course and Scope of Employment and Willful and Wanton Conduct

*Ball*, the case relied on by plaintiffs, does not contain a discussion of whether the

employee was acting within the course and scope of his employment with his employer at

the time of the accident that gave rise to the plaintiff's claim.  In *Ball*, the plaintiff had

brought an action for personal injuries against the employer, the owner of a transfer

company, and against the driver, an employee of the owner.  *Ball*, 342 S.W.2d at 680-81.

The plaintiff, with the "knowledge, acquiescence and implied permission" of the employee-

driver, boarded a vehicle being driven by the employee-driver as he hauled cargo for the

employer.  *Id.* at 681.  The employer had given the employee-driver explicit instructions not

---

[6] In *Leeper*, the Tennessee court of appeals applied a course and scope of employment
analysis to an employee's conduct during an accident that occurred when the employee, who was
in the process of driving his employer's truck on the way to lunch, negligently struck a boy on a
motorcycle.  *Leeper Hardware Co.*, 434 S.W.2d at 555-56.

to permit another person to ride on the vehicle, instructions the employee-driver was aware of and understood. *Id.* While the plaintiff was aboard the vehicle, the employee-driver negligently turned the vehicle, causing the plaintiff to be thrown off the vehicle and injured. *Id.* The trial court directed a verdict in favor of the employer. *Id.* Following the plaintiff's appeal, the Tennessee court of appeals affirmed the holding of the trial court stating that:

> Where an employee, the driver of a truck, contrary to instructions from his employer, permits others to ride on the truck or a trailer, the status of the rider is not that of guest or invitee but of trespasser with respect to the employer. So, when such a rider is injured, the employer is liable only for such injuries as are caused by the wanton or wilful [sic] acts of the driver.

*Id.* at 681-82 (citing *Home Stores, Inc. v. Parker*, 166 S.W.2d 619 (Tenn. 1942)).[7] Accordingly the court of appeals found, "[t]here being no proof that the acts of the driver . . . were wanton or wilful [sic], therefore there was no question of fact to submit to the jury . . . ." *Id.* at 682. Thus, despite stating the proposition that an employer may be liable for the willful and wanton conduct of an employee, the court of appeals found that the employee-driver's conduct was not willful and wanton and thus, the court did not engage in further analysis.

    *Home Stores, Inc. v. Parker* is one of the two cases cited in *Ball* from which the Tennessee court of appeals deduced the statement of an employer's liability for an

    [7] The other case cited in *Ball* is *Reynolds v. Knowles*, 206 S.W.2d 375 (Tenn. 1947). The analysis of the facts and law in *Reynolds* are not applicable to this case as the issue in *Reynolds* was whether the employer's actions, not the actions of the employee, constituted wanton, willful, or reckless negligence. *Reynolds*, 206 S.W.2d at 338-39.

employee's willful and wanton conduct. *Homes Stores*, 166 S.W.2d 619. In *Homes Stores*, the plaintiff, a minor, was injured when he was thrown against the front of a truck being driven by a driver, an employee of the owner. *Id.* at 620. The employer had explicitly instructed the employee-driver not to allow anyone to ride on the truck. *Id.* at 621. The plaintiff, by his next friend, brought suit against the employer, alleging first that the employee-driver was negligent and second, that the employee-driver was grossly or wantonly negligent. *Id.* at 620. The court granted the employer a directed verdict on the issue of whether the employee-driver acted with gross or wanton negligence, but refused to grant a directed verdict on the issue of whether the employee-driver acted with simple negligence. *Id.* The jury returned a verdict for the plaintiff on the allegation of simple negligence, and the employer moved for a new trial, arguing that the trial court erred in not also directing a verdict on the plaintiff's allegation of simple negligence. *Id.* The employer argued that because the employee-driver lacked authority to invite other persons to ride on the truck, by inviting the plaintiff to ride, the employer was acting outside the scope of his employment and the plaintiff was therefore a trespasser, "to whom the defendant [the employer] owed no duty except to see that he [the plaintiff] was not willfully and wantonly injured." *Id.*

In deciding the employer's request for a new trial, the Tennessee Supreme Court recited the same proposition stated in *Ball*, that the plaintiff was the guest of the employee-driver and that the employee-driver had no authority to permit passengers in the vehicle and therefore the plaintiff was a trespasser as to the employer "and [the employer] was liable to him only for injuries caused by the wanton, willful, or reckless negligence of [the employee-

driver]." *Home Store*, 166 S.W.2d at 621. The Tennessee Supreme Court then discussed three cases from which it arrived at this statement of liability: *Lipscomb v. News Star World Pub. Corp.*, 5 So.2d 41 (La. App. 1941); *Foster-Herbert Cut Stone Co. ("Stone") v. Pugh*, 91 S.W. 199 (Tenn. 1906); and *Liggett & Myers Tobacco Co. v. DeParcq*, 66 F.2d 678 (8th Cir. 1933). According to the *Home Store* court, these cases, taken together, state that a passenger who rides in an employer's vehicle pursuant to an invitation by the employee is a trespasser to the employer when the employee had no implied or apparent authority to issue the invitation and, "short of wantonness," the employer will not be liable for any injury caused by the negligence of the employee . *See Home Store*, 166 S.W.2d at 621 (quoting *Liggett*, 66 F.2d 678 and Vartanian, on The Law of Automobiles in Tennessee, p. 412, § 121).

After noting the preceding authorities, the Tennessee Supreme Court found that the trial error erred in not also granting the directed verdict in favor of the employer as to the plaintiff's allegation of simple negligence. *Home Store*, 166 S.W.2d at 622. Although the court in *Home Store* referred to the course and scope of employment issue, similar to *Ball*, the *Home Store* court did not explicitly discuss whether the employee-driver was acting within the course and scope of his employment.[8]

---

[8] Indeed, the *Home Store* court noted that, although the employer "correctly stated the law" regarding the trial court's refusal "to charge its special requests as to the [employee-driver]'s want of authority to let the boys ride in the truck in violation of instructions[,]" because of the court's determination that the trial court erred in not granting the directed verdict as to the first count, the court designated these issues immaterial. *Home Store*, 166 S.W.2d at 622.

20

In *Lipscomb*, the parents of the decedent sued an employer, alleging that the negligent actions of the employer's agent, a driver of a truck, caused the decedent's death while the agent-driver was performing duties within the scope of his employment for the employer. *Lipscomb*, 5 So.2d at 42. While on a trip for the company, the agent-driver picked up the decedent as a passenger. *Id*. The trip was uneventful until the agent-driver attempted to cross a railroad, at which time the truck was struck and both the agent-driver and the decedent were killed instantly. *Id.* The plaintiffs argued that the agent-driver regularly invited persons to accompany him on trips made in the discharge of his duties with the employer and the employer impliedly consented to and acquiesced in this conduct. *Id.* Alternatively, the plaintiffs asserted, even if the employer did not have knowledge of the agent-driver's habit of inviting persons to ride with him, the employer should be liable on grounds that the agent-driver acted willfully and wantonly. *Id.* at 42-43. The employer denied any knowledge that the agent-driver had a habit of inviting persons to ride with him and asserted that the agent-driver was acting in violation of the employer's rules and beyond the scope of his employment. *Id.* at 43.

The *Lipscomb* court found that the record was well substantiated that the agent-driver frequently allowed persons to ride in the truck, but that the record was also clear that the employer made a consistent effort to enforce its rule that no unauthorized persons were allowed in its trucks. *Id.* Thus, the court concluded, the agent-driver did not have any apparent authority to invite the decedent to ride in the truck and therefore, the decedent was

a trespasser as to the employer. *Id.* at 44. The *Lipscomb* court then quoted what it designated the "majority rule":

> [I]t is well settled by the weight of judicial decisions that, if after the unauthorized act of the servant and the violation of his duty to his master, and when acting in the general scope of his authority, he becomes guilty of wanton, willful or reckless negligence in the operation of the machine or vehicle in his charge and injuries result therefrom to his invitee or licensee, the master is liable therefor, such operation being regarded as done within the general scope of his authority.

*Id.* at 44 (quoting 5 Blashfield'S Cyclopedia of Automobile Law and Practice, Perm. Ed. § § 3016, 3017, pages 144-51). The *Lipscomb* court concluded that it was "disposed to follow the majority rule" stated above and thus, it would need to inquire into whether the decedent's death was due to the willful and wanton negligence of the agent-driver, ultimately concluding that the agent-driver's actions were not willful and wanton. *Id.* at 44-45. In so holding, the *Lipscomb* court did not explicitly discuss whether the agent-driver was acting within the course and scope of his employment.

In *Stone*, a young boy was invited by a employee to ride on a wagon driven by the employee and owned by the employee's employer. *Stone*, 91 S.W. at 199. After riding a short distance on the wagon, the boy jumped off, fell to the ground, and the wagon ran over him, causing fatal injuries. *Id.* at 199-200. Suit was brought against the employer, alleging that the boy's injuries were a result of the employee's negligence in permitting the boy to ride the wagon. *Id.* at 200. The jury returned a verdict against the employer and the employer appealed. *Id.* The Tennessee Supreme Court reversed, finding that

> The case made out is one where a skillful driver is placed in charge of his master's wagon . . . . It is not claimed that the driver was either expressly or by implication authorized by his master to extend the invitation to the children to get upon the wagon, or that this act of the servant was in any sense or degree within the scope of his employment or in furtherance of his master's business. Under these facts we think [it] is [sic] well settled that the master cannot be called upon to respond in damages for the injury resulting from such unauthorized act.

*Id.*[9] Once again, the court in *Stone* did not explicitly discuss course and scope of employment and it appears that the type of negligence alleged was that of simple negligence, not willful and wanton.

In *Liggett*, the plaintiff was riding as a passenger in a car being driven by an employee who was using the car on the business of his employer. *Liggett*, 66 F.2d at 680. An accident occurred and the plaintiff sued the employer asserting that the actions of the employee were negligent and that such negligence caused the plaintiff's injuries. *Id.* The court then reviewed various principles of agency law, noting that, generally, "[a]n employee in possession of his employer's automobile has no implied or apparent authority to invite others to ride with him, and, if a passenger is injured by the negligence of an employee while riding in the employer's automobile pursuant to an invitation of the employee, the employer is not liable . . . ." *Id.* at 685. The court then acknowledged that "the authorities generally make

---

[9] The *Stone* case also discusses and bases its holding, in part, on the tort doctrine of attractive nuisance, addressing the plaintiff's argument that the wagon was "so dangerously attractive to young children that the duty devolved upon the owner to exercise corresponding diligence to see that no injury resulted to them therefrom, and, failing to do so in the present case, it is liable." *Stone*, 91 S.W. at 200. The *Stone* court was also careful to note that "[t]he authority of this case must be confined within the narrow limits of its own facts and will not be extended to support a judgment resting on facts like those presented in this record." *Id.* at 201.

an exception in the case of willful and wanton negligence of the employee." *Id.* The court ultimately concluded, however, that under the facts of that case, there was "no claim of such wanton or willful negligence" and thus, "that exception need not be considered." *Id*.

The more recent case of *Lucas v. Schneider Nat. Carriers, Inc.*, 953 F.2d 644, 1992 WL 9027 (6th Cir. Jan 22, 1992) (Table) is also helpful to the Court's analysis. In *Lucas*, the plaintiff, a wife of a truck driver, was traveling with her husband in a truck owned by the defendant, the husband's employer. *Lucas*, 1992 WL 9027 at *1. The plaintiff's husband was driving the truck when, for reasons unknown, the truck left the roadway and overturned. *Id.* The plaintiff's husband, the driver, was killed, and the plaintiff was severely injured. *Id.* The plaintiff brought suit against the defendant, relying on the doctrine of *res ipsa loquitur* and alleging that the negligent driving of her deceased husband was the cause of her injuries and such negligence could be imputed to the defendant on theories of respondeat superior or apparent authority and agency. *Id.* Although the employer permitted spouses of drivers to ride as passengers under some circumstances, the defendant argued that these circumstances were not present and it was therefore against the defendant's policy for the husband to have had his wife as a passenger in the truck. *Id.* at *3.

The trial court agreed and concluded that the husband's "lack of actual authority [was] overwhelming" and the plaintiff was a trespasser under Tennessee law. *Lucas*, 1992 WL 9027 at *3-*4. The court then stated the now familiar proposition from *Ball*, that "[w]here an employee . . . contrary to instructions from his employer, permits others to ride on the truck . . . the status of the rider is not that of a guest or invitee but of trespasser with respect

24

to the employer.  So, when such a rider is injured, the employer is liable only for such injuries as are caused by the wanton or willful acts of the driver." *Id.* at *4.  The *Lucas* court ultimately concluded that the plaintiff's claim must fail because her theory of *res ipsa loquitur* liability could not be used to show willful and wanton negligence.  *Id.*

### D.    The Facts of this Case

The cases referenced and analyzed above do not explicitly discuss whether each employee was acting within the course and scope of his employment with the employer. However, each case discusses facts important to the course and scope of employment inquiry and principles of agency law: the scope of the employee's authority to perform the general act he was performing for the employer when the complained of accident occurred; the apparent, actual, or ostensible authority each employee had to do the act complained of; whether that particular act was disallowed by the employer; the employer's knowledge or lack of knowledge regarding the employee's wrongful acts; and the passenger's status in relation to the employer.  For instance, in each of the cases, the courts made a point of noting whether the employee had the general authority to do what the employer was doing–*i.e.*, drive the vehicle for the employer.  The courts also noted whether the employee had the implied, apparent, or ostensible authority to do the disallowed act–*i.e.*, invite a passenger to ride on the employer's vehicle.  Finally, the courts discussed the status of passengers *vis-a-vis* the employers–*i.e.*, a passenger in an employer's vehicle riding under an unauthorized invitation by the employee is a trespasser as to the employer.  In all these cases, the injury to the plaintiff occurred when the employee was engaged in conduct that he had the general

authority to do for his employer–drive the employer's vehicle. In all these cases, the employee did not have the authority to invite another person into the vehicle. Moreover, the courts in these cases did not have to decide the precise issue that is before this Court: whether an employer could be held liable for the willful and wanton conduct of an employee when that employee not only invites a passenger into the employer's vehicle, but allows the unauthorized passenger to operate the vehicle.

In *Ball* and the related cases, the conduct of the employees occurred within the general authority given to them by their employers–the authority to operate the employer's vehicle. However, the specific conduct of the employees, allowing passengers to ride in the employer's vehicle, was prohibited. In this case, Ritchie's conduct, hauling cargo and operating a truck owned by defendant, was also within the general authority given by defendant to Ritchie. Further, per the jury's finding, in permitting Bowman to operate the truck, Ritchie was acting willfully and wantonly. Thus, the specific conduct of Ritchie that the jury found to be willful and wanton–relinquishing control of the truck to Bowman–was unauthorized and prohibited by defendant. Under *Ball*, a employer may be liable for an employee's conduct, even if it was "contrary to instructions from his employer," when another person suffers injuries "caused by the wanton or wilful [sic] acts of the driver." *Ball*, 342 S.W.2d at 680-81. Thus, the facts of this case and the findings of the jury fall almost squarely within the *Ball* statement of liability.

However, the Court must note that the general scope of employment within which Ritchie's conduct occurred differs from the facts of *Ball* and the other relevant cases. This

is because Ritchie, the employee, was not operating the truck at the time of the accident.  In the other cases analyzed by the Court, the employees were driving or operating the vehicles when the accidents occurred.  The Court, however, does not find that any of the preceding cases limited the specific conduct that is the touchstone for the statement of liability in *Ball* to an employee's actual operation of a vehicle.  Rather, the cases recite the proposition for an employer's liability due to willful and wanton conduct within the courts' more general references to an employee's willful and wanton "conduct," not the narrow category of an employee's willful and wanton "driving" or "operation" of a vehicle.  Thus, the Court does not find that this distinguishing fact precludes plaintiff from recovery.

The courts that have followed the proposition stated in *Ball*, by expressly singling out and distinguishing an employee's conduct that was willful and wanton, manifested an intent to enable a potential plaintiff to recover for his or her injuries even when the employee was acting contrary to the employer's directive.  For instance, in *Ball*, the employee's conduct was unauthorized.  However, because the employee's conduct was not willful and wanton, the employer was not liable.  *Ball*, 432 S.W.2d at 680-82.  Similarly, in *Lipscomb*, the employee's actions were unauthorized and in violation of his duties to his employer. *Lipscomb*, 5So.2d at 44.  However, like in *Ball*, the court found that the employer was not liable because the employee's conduct was not willful and wanton.  *Id.* at 44-45.  *Liggett* is also similar.  The *Liggett* court noted the general rule that an employer will not be liable for the unauthorized act of an employee inviting a passenger to ride in an employer's vehicle, but also acknowledged the "exception in the case of wanton and willful negligence of the

employee." *Liggett*, 66 F.2d at 685. In *Stone*, the court noted that the actions of the employee were not "in any sense or degree within the scope of his employment or in furtherance of his master's business." *Stone*, 91 S.W. at 200. Because the employee's actions were only alleged to be negligent (not, by implication, willful and wanton), "[u]nder these facts . . . the master cannot be called upon to respond in damages for the injury from such unauthorized act." *Id.*

The facts of this case present the situation contemplated but not presented in *Ball, Lipscomb*, and *Liggett*, unauthorized conduct by an employee that was in violation of direct orders of the employer, and conduct by the employee that was willful and wanton, not merely negligent, like in *Stone*. This is indeed a departure from the typical, more contemporary course and scope of employment analysis in that it does not use course and scope of employment as the test by which liability is determined, utilizing instead an inquiry into the type of conduct engaged in by the employee and the passenger's status in relation to that of his or her employer. The Court cannot conclude that the courts that distinguished willful and wanton conduct by employees intended nothing by explicitly excepting such conduct from conduct that was simply negligent. Doing so would render meaningless the willful and wanton "exception" identified by these courts. The cases discussed above do not support such a result.

Thus, for the reasons given above, the Court finds the facts of this case fall within the statement of law articulated in *Ball* and the other relevant cases. Accordingly, the jury's determination that the conduct of Ritchie was willful and wanton renders defendant, as

Ritchie's employer, liable for plaintiff's injuries and the Court will enter judgment in favor of plaintiff and against defendant in the amount of $206,250.00.[10]

### E. Punitive Damages

Under Tennessee law, punitive damages may be awarded against a principal whose liability arises from the acts of an agent. *See Medlin v. Clyde Sparks Wrecker Serv., Inc.*, 59 F. App'x 770, 775 n.4 (6th Cir. 2003); *see also Dodson v. Anderson*, 710 S.W.2d 510, 513 (Tenn. 1986); *Huckeby v. Spangler*, 563 S.W.2d 555, 559 (Tenn. 1978). Accordingly, and in light of the above determination that defendant, Ritchie's employer, is liable for Ritchie's willful and wanton conduct under *Ball* and the other relevant cases, the jury's finding that plaintiff is entitled to punitive damages for the conduct of Ritchie, the Court's previous ruling that the estate of Ritchie cannot be liable for punitive damages, and the dismissal from this action of the estate of Ritchie, the Court finds that defendant may indeed be liable for punitive damages for the conduct of Ritchie. The Court will therefore schedule the punitive damages phase of this trial to enable the jury to determine the amount of punitive damages. Following the jury's determination of the amount of punitive damages, the Court will enter its final judgment.

---

[10] The jury determined that plaintiff was entitled to $275,000.00 in damages and assigned 65% of the fault to Ritchie, 10% of the fault to defendant, and 25% of the fault to Bowman [Doc. 92]. Accordingly, because the fault of Ritchie is imputed to defendant for Ritchie's willful and wanton conduct, defendant's total fault is 75%. Under Tennessee law and principles of comparative fault, the total amount of damages for which defendant is liable is thus $206,250.00, or $275,000.00 x 75%.

### III.     Conclusion

For the reasons stated herein, it is hereby determined that defendant is liable to plaintiff for the willful and wanton conduct of Ritchie.  Final judgment will be entered pending the Court's setting of a date certain as to the punitive damages phase of the trial at which the amount of punitive damages will be determined by the jury.  Plaintiffs' Motion [Doc. 96] for new trial pursuant to Federal Rule of Civil Procedure 59 is also **DENIED without prejudice**.

IT IS SO ORDERED.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE